UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS

Before the Court is a Motion to Dismiss filed by defendants McGladrey & Pullen, LLP, G. Victor Johnson, and Paul Nockels (Docket No. 46). Defendant RSM McGladrey, Inc. has joined that Motion (Docket No. 49). Defendants challenge the sufficiency of the Second Amended Complaint ("SAC") filed by plaintiff American National Trading Corporation ("ANTC"). ANTC subsequently filed a Motion for Order for Compliance with Federal Rules of Civil Procedure 26(a) and (f) (Docket No. 59). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.

I.  Factual Background

This action arises out of the collapse of Sentinel Management Group ("Sentinel"). Sentinel was registered with the Commodities Future Trading Commission ("CFTC") as a futures commission merchant ("FCM") and as an investment advisor with the Securities and Exchange Commission ("SEC"). As an FCM and investment advisor, Sentinel was in the business of managing accounts for a client base that included other FCMs, hedge funds, financial institutions, pension funds, and individuals. ANTC, which was itself an FCM, deposited a portion of its own customers' funds with Sentinel beginning in 2004. ANTC began its relationship with Sentinel based on a referral from defendant Paul Nockels who served as the engagement partner for audits of ANTC. At the time he referred ANTC to Sentinel, Nockels, a certified public accountant, was a partner at Alschuler, Melvoin & Glasser LLP ("AM&G"). Johnson, also a partner at AM&G, was responsible for Sentinel's audits. Although the exact details are still not clear, AM&G was apparently acquired by or merged into McGladrey & Pullen, LLP ("M&P") in 2006. In addition to their current roles at M&P, Nockels and Johnson are co-employed by defendant RSM McGladrey, Inc. ("RSM").

According to the SAC, regulations require FCMs such as Sentinel and ANTC to keep funds deposited by an FCM's customers segregated from the funds of the FCM, maintain a certain portion of their funds as liquid assets, and have outside audits performed to test the FCM's compliance with applicable regulations. Pursuant to these regulations, Sentinel maintained separate portfolios to segregate the funds of its customers from Sentinel's own funds. The SAC alleges that despite its

Case 2:08-cv-05325-PA-MAN Document 67 Filed 12/14/09 Page 2 of 8 Page ID #:956

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

obligation to segregate its funds from those of its customers, Sentinel, beginning in 2003, started purchasing an increasingly large volume of highly leveraged securities for its own benefit without segregating them from Sentinel's customer accounts.

These leveraged transactions typically involved either purchases with funds from a loan Sentinel had at Bank of New York ("BONY") or a repurchase counterparty (so-called "repo" transactions) in which Sentinel would deliver a security to its counterparty who would then deliver a percentage of the value of the security to Sentinel. Sentinel would later be required to repurchase the security from the counterparty with interest. To finance these repurchases, in which the counterparty would only loan a percentage of the total — typically 90% — back to Sentinel, Sentinel relied on the BONY loan. As a result of these transactions, the BONY loan grew from approximately $23 million in late 2002 to over $230 million by the end of 2006. As the amount of the loan grew, BONY required correspondingly larger amounts of collateral to secure the loan. Once Sentinel's own accounts became insufficient to secure the loans, Sentinel allegedly began collateralizing the loan with securities that were supposed to be segregated for its customers.

ANTC alleges that Johnson's audits of Sentinel never disclosed Sentinel's wrongdoing and that the audits of ANTC overseen by Nockels also failed to uncover the shortcomings in Sentinel's operations. According to the SAC, Sentinel's scheme collapsed in August 2007. After the collapse, "Sentinel was only able to return to ANTC 70% of ANTC's assets" and ANTC was forced to "'fire sale' all of its assets to avoid a regulatory shutdown." (SAC ¶ 32.) As a result of the "fire sale," ANTC "was no longer able to conduct its business." (Id. ¶ 143.) ANTC alleges that if defendants had fulfilled their obligations to ANTC and "delivered accurate audit reports for either ANTC or Sentinel in March or April of 2007, ANTC would have had no choice but to withdraw its funds from Sentinel unless Sentinel changed its operations. Furthermore, if at anytime prior to April 2007 M&P and/or its legal predecessor AM&G, had fulfilled its obligations to ANTC and delivered accurate audit reports and other documents for either ANTC or Sentinel, or reported the illegal scheme to ANTC or regulators, ANTC would have withdrawn its funds and used one of the other readily available asset managers. Thus, ANTC would have avoided its losses entirely." (Id. ¶ 145.)

In Sentinel's bankruptcy proceeding, still ongoing in the Northern District of Illinois, the bankruptcy trustee commenced an adversary proceeding against M&P and Johnson alleging claims for negligent accounting and aiding and abetting. Approximately 150 paragraphs from the trustee's complaint in that action were copied by ANTC and included in its First Amended Complaint ("FAC") in this action to support ANTC's claims for violations of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, Commodities Exchange Act ("CEA"), 7 U.S.C. § 25, and common law claims for malpractice, breach of fiduciary duty, breach of contract, fraud, and negligent misrepresentation.

The Court granted defendants' Motions to Dismiss the FAC's federal claims with leave to amend and declined to address the state law causes of action until ANTC could adequately allege claims over

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

which the Court had jurisdiction.  The SAC abandons the securities fraud claims contained in the FAC and adds some additional facts to the RICO and CEA claims.  The SAC also realleges ANTC's state law claims for:  (1) malpractice based on breach of contract against M&P and Nockels; (2) professional malpractice against M&P and Nockels; (3) malpractice based on breach of contract against M&P and Johnson; (4) professional malpractice against M&P and Johnson; (5) aiding and abetting/knowing participation in breach of fiduciary duty against M&P and Johnson; (6) fraud against M&P and Nockels; (7) negligent misrepresentation against M&P and Nockels; (8) fraud against M&P and Johnson; and (9) negligent misrepresentation against M&P and Johnson.

II.      Standard on Motion to Dismiss

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice."  Fed. R. Civ. P. 12(b)(6), 8(e).  The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).  The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6).  See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery."  Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted).  Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]."  Id. at 556, 127 S. Ct. at 1965.  For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted).  In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal

SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

The more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

III.   Analysis

ANTC has cured some, but not all, of the deficiencies the Court identified when it dismissed the FAC with leave to amend. ANTC has, for instance, explained why it often refers to AM&G, M&P, and RSM collectively. While sloppy pleading in the FAC made this grouping of the defendants unnecessarily confusing, the SAC alleges that Nockels and Johnson "used and worked under the auspices of [M&P and RSM] interchangeably and gave business cards to plaintiff under both such company names." (SAC ¶ 14.) As a result, according to ANTC, "[i]t is unknown to plaintiff at this time precisely which conduct of Defendants Nockels and Johnson was undertaken as employees of RSM and which conduct was undertaken as employees of M&P, or if there is in fact any distinction between the two companies." (Id.) Although the SAC at times still confusingly groups the defendants together, ANTC's failure to draft the SAC as the Court might desire is not itself a basis for dismissal.[1/] Instead, the Court must still look at the facts alleged in the SAC and determine if those facts adequately state the claims asserted by ANTC.

In other respects, ANTC appears to have completely ignored the Court's discussion of the FAC's deficiencies. The SAC's allegations concerning jurisdiction based on the existence of diversity between the parties merely repeats the inadequate allegations contained in the FAC. The SAC still does not

---

[1/]   The SAC is sloppily drafted in other ways as well, including the inclusion of two "twelfth" counts, one of which is included in the SAC after the eighteenth claim, and the failure to include a prayer for relief.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

adequately allege diversity jurisdiction.[2/]  Instead, the only possible jurisdictional basis is the existence of a federal question.

Defendants challenge the adequacy of each of the claims asserted in the SAC.  Specifically, defendants contend that ANTC's RICO claims fail because the SAC does not, among other infirmities, sufficiently allege proximate cause.  The CEA claim, according to defendants, fails to allege sufficient facts to state a claim.  Defendants argue that each of the FAC's common law claims suffer from a variety of defects.  RSM contends that the claims against it should be dismissed because there are no facts alleged against it other than that Johnson and Nockels were its co-employees.  Finally, RSM and M&P contend that the SAC fails to allege successor liability against them for any wrongs committed by AM&G.

    A.    <u>RICO Claims</u>

ANTC alleges pursuant to 18 U.S.C. § 1962(c) that the RICO enterprise alternatively consisted of: (1) Sentinel, BONY, M&P, and AM&G; (2) Sentinel; or (3) M&P and AM&G.  RICO claims arising out of each of these alternative RICO enterprises are alleged against M&P (Counts 11 and 12), Nockels (Counts 13, 14, and 15), and Johnson (Counts 16, 17, and 18).  The FAC also alleges a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) arising out of the same RICO enterprises (the second Count 12).

---

[2/]    Specifically, in support of its contention that diversity jurisdiction exists, the SAC repeats the FAC's inadequate allegations that ANTC is a citizen of California, that defendants Johnson and Nockels "reside" in Illinois, that RSM is a Delaware corporation, and that M&P, a limited liability partnership, has its "headquarters in Bloomington, Minnesota."  These allegations are insufficient to establish the Court's diversity jurisdiction.  The SAC fails to properly allege the citizenship of M&P because it does not allege the citizenship of each of its members.  <u>See</u> <u>Johnson v. Columbia Properties Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens."); <u>Guaranty v. Nat'l Title Co.</u>, 101 F.3d 57, 59 (7th Cir. 1996) ("To determine the citizenship of the [limited liability partnership], we need to know the name and citizenship(s) of its general and limited partners."); <u>America's Best Inns, Inc. v. Best Inns of Abilene, L.P.</u>, 980 F.2d 1072 (7th Cir. 1992); <u>see also</u> <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (7th Cir. 1987) ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties.").  Moreover, the SAC fails to properly allege the citizenship of Johnson and Nockels because residence and citizenship are distinct concepts, with significantly different jurisdictional ramifications.  <u>See</u> <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 828, 109 S. Ct. 2218, 2221, 104 L. Ed. 2d 893 (1989).  Additionally, the SAC, by failing to allege the principal place of business of RSM, fails to properly allege its citizenship.  <u>See</u> 28 U.S.C. § 1332(c)(1); <u>see also</u> <u>New Alaska Dev. Corp. v. Guetschow</u>, 869 F.2d 1298, 1300-01 (9th Cir. 1989).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud applies to RICO claims. Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004). To plead a civil RICO claim a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985)). RICO defines the "predicate acts" for "racketeering activity" to include mail and wire fraud. 18 U.S.C. § 1961(1). To state a RICO claim, a plaintiff must also allege facts supporting a finding of proximate causation. Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

In dismissing the FAC, the Court concluded that ANTC had failed to allege the predicate acts with sufficient particularity. The SAC attempts to remedy those inadequacies by clarifying that the mail and wire fraud supporting the RICO claims relate to the preparation and dissemination of the audit reports of Sentinel prepared by AM&G and M&P. (SAC ¶¶ 221-22.) The Court determines that the new allegations satisfy the substantive requirements for stating a RICO claim. In reaching this conclusion, the Court notes that it continues to question ANTC's ultimate ability to prove that defendants' "predicate acts" "led directly" to its injuries. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461, 126 S. Ct. 1991, 1998, 164 L. Ed. 2d 720 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). Indeed, the SAC's mere deletion of the FAC's allegations concerning the losses Sentinel experienced when its leveraged repo transactions suffered market losses does not make ANTC's causation theory any less attenuated. See Canyon County, 519 F.3d at 982 ("[T]he asserted causal chain in this instance is quite attenuated, and there are numerous other factors that could lead to [increase the alleged harm].")). Nevertheless, the Court concludes that ANTC has alleged sufficient facts in support of its causation theory to survive a motion to dismiss. See In re Gilead Sciences Securities Litig., 536 F.3d 1049, 1057 (9th Cir. 2008) ("So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate. This is not 'a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' loss causation.") (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1965, 167 L. Ed. 2d 929).

The one exception to the Court's conclusion concerning the sufficiency of ANTC's RICO allegations concerns the SAC's Counts 15, 16, and 18, in which M&P and AM&G are alleged to constitute a RICO enterprise separate and independent from its association with Sentinel. The SAC contains no factual allegations in support of a conclusion that the auditing firm itself was a RICO enterprise. These Counts therefore fail to satisfy the Twombly pleading standard, and the Court dismisses Counts 15, 16, and 18 with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

      B.      Commodities Exchange Act Claim

      The Commodities Exchange Act creates a private right of action against any person "who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter . . . ." 7 U.S.C. § 25(a)(1). "The elements that a plaintiff must allege to state a claim for aiding and abetting liability under [7 U.S.C. § 25] are . . . the same elements that must be established to prove a violation of 18 U.S.C. § 2." Damato v. Hermanson, 153 F.3d 464, 473 (7th Cir. 1998). Therefore, to state a claim pursuant to § 25 of the Commodities Exchange Act, a plaintiff must allege that the defendant "(1) had knowledge of the principal's . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." Id.

      The Court concludes that the SAC now adequately alleges a CEA aiding and abetting claim. Defendants' reliance on the Northern District of Illinois' observation that it doubts "that the CEA applied to Sentinel" is unavailing. Grede v. Bank of New York, No. 08 C 2582, 2009 WL 188460, at *6 (N.D. Ill. Jan. 27, 2009). In Grede, despite the court's doubts as to the applicability of the CEA to Sentinel, the Northern District of Illinois concluded that the CEA claim should survive a motion to dismiss. This Court similarly concludes that the SAC's CEA claim alleges sufficient facts to survive a motion to dismiss.

      C.      State Law Claims

      ANTC's nine state law claims fall into three categories: those arising out of work Nockels, AM&G and M&P did for ANTC (Counts 1 and 2), those arising out of work performed by Johnson, AM&G, and M&P on behalf of Sentinel (Counts 3, 4, and 5), and fraud (Counts 6,7, 8, and 9). While the Court concludes that the SAC has sufficiently alleged state law claims arising out of work performed for ANTC, the Court concludes that the claims ANTC is pursuing based on work performed for Sentinel are fatally flawed because ANTC is not a third-party beneficiary of the contractual relationship between Sentinel and its auditors. See Quinn v. McGraw-Hill Cos., 168 F.3d 331, 334 (7th Cir. 1999). Those claims are therefore dismissed with prejudice. The Court concludes that the fraud and negligent misrepresentation claims are alleged with sufficient specificity to survive a motion to dismiss.

      D.      Liability of M&P and RSM

      M&P and RSM also seek to have the claims alleged against them dismissed because ANTC has attempted to make them liable as a successor to AM&G. The SAC alleges that M&P "acquired AM&G in a legal merger" in November 2006. Defendants contend that because the general rule under Illinois law is that a company that buys the assets of another company does not acquire the liabilities of the purchased company, M&P and RSM cannot be liable for any wrongdoing committed by Johnson and Nockels when they worked at AM&G or for AM&G's own liabilities. See Fenderson v. Athey Prods. Corp., 581 N.E.2d 288, 290 (Ill. App. Ct. 1991). The SAC does not specify the nature of the sale of

**SEND**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5325 PA (MANx) | Date | December 14, 2009 |
|---|---|---|---|
| Title | Am. Nat'l Trading Corp. v. McGladrey & Pullen, LLP, et al. | | |

AM&G, nor is it something, in this instance, that ANTC should be required to allege to satisfy the federal pleading standard. It would therefore be inappropriate to resolve the issue of the potential successor liability of M&P and RSM at this stage of the proceedings.

## CONCLUSION

      For all of the foregoing reasons, the Court grants in part, and denies in part, defendants' Motion to Dismiss. Specifically, the Court dismisses Counts 3, 4, 5, 15, 16, and 18 with prejudice. The Court denies the Motion to Dismiss the remaining claims. Defendants shall answer those remaining claims by December 28, 2009. Once defendants' Answers are on file, the Court will issue an Order Setting Scheduling Conference and the parties' obligations under Federal Rule of Civil Procedure 26 will be triggered. The Court therefore denies ANTC's Motion for Order for Compliance with Federal Rules of Civil Procedure 26(a) and (f) (Docket No. 59) as moot.

      IT IS SO ORDERED.

_____ : _____
Initials of Preparer